## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| BRIAN HENDERSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MARK CRIMMINS, in his official capacity as Chairman of the Board of Iowa Central Community College, DAN KINNEY, in his official capacity as President of Iowa Central Community College, TOM BENEKE, in his official capacity as Vice President of Student Enrollment and Student Development for Iowa Central Community College, and ANTHONY ACKLIN, individually and in his official capacity as Student Activities Coordinator for Iowa Central Community College,<br><br>    Defendants. | No. C 15-3130-MWB<br><br><br><br>**ORDER AND OPINION<br>REGARDING PLAINTIFF'S<br>MOTION FOR ATTORNEY FEES** |

    **Blind-side**, *v.*: In sport, to attack or strike (an opponent) on the blind side. Chiefly *fig.*, to take advantage of a weakness in (another), to take unawares.

OXFORD ENGLISH DICTIONARY ONLINE (Sept. 2015).

## TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | FACTUAL AND PROCEDURAL HISTORY............................................. | 3 |
| II. | AUTHORITY FOR AND CALCULATION OF FEE AWARDS ................... | 6 |
| III. | ARGUMENTS OF THE PARTIES........................................................... | 8 |
| IV. | LEGAL ANALYSIS ............................................................................... | 10 |
| | A. Are Hours Requested for Excessive Work?................................. | 10 |
| | B. Are Hours Requested for Unnecessary Work?............................. | 15 |
| | C. Repeated Inflated Fee Requests.................................................. | 18 |
| V. | CONCLUSION...................................................................................... | 19 |

The central question in this dispute, about the plaintiff's request for a total of $40,957.13 in attorney fees and non-taxable expenses pursuant to the Civil Rights Attorney Fees Award Act of 1976, 42 U.S.C. § 1988, is whether it is reasonable for an attorney to start churning billable hours under a fee-shifting statute, thereby blind-siding the defendants with substantial fees, before alerting the defendants of the dispute and incoming suit, robbing the defendants of an opportunity to eliminate unnecessary fees by plaintiff's counsel. Does this type of blind-siding tactic fall outside the scope of reasonableness, and, if so, what effect does it have on the amount of attorney fees that should be awarded? Stated bluntly, on the facts of this case, would a reasonable fee-paying plaintiff really pay over $40,000 in fees to an attorney who (1) performs over 100 hours of work before filing the lawsuit, and (2) **then** contacts the defense attorney for the other side and settles the case after a few phone calls and email exchanges in less than two days after being contacted? If the answer is no, then why should the defendants pay that amount in this case? Additionally, the relationship between a high hourly rate, warranted by seasoned attorneys, and how many hours they may reasonably bill for, is explored below.

## I. FACTUAL AND PROCEDURAL HISTORY

Beginning in 2013, Brian Henderson visited the campus of Iowa Central Community College ("ICCC") with the intent to share the message of his Christian faith with college-aged students. In his efforts to engage students in conversation, he would hand out Christian literature or offer one dollar prizes for answers to trivia questions. On February 24, 2014, Henderson was told by a campus security guard that handing out money on campus was prohibited under ICCC's anti-solicitation policy ("Policy 215"). Henderson disagreed with the campus security guard's interpretation of Policy 215 and returned to the ICCC campus to continue engaging students in the same manner. After the same security guard ejected him again, for engaging in the allegedly prohibited behavior of solicitation, Henderson spoke with a school administrator, then the President of ICCC, then finally the Board of ICCC on June 10, 2014, in an attempt to show that Policy 215 was inapplicable to his behavior. At each meeting, the school officials reasserted that Policy 215 prohibited the behavior Henderson sought to engage in, namely handing out money and Christian literature. ICCC officials told Henderson that they consulted with the college's attorney, who confirmed that Henderson's speech was prohibited under the anti-solicitation policy. Believing that his constitutional rights were being violated, Henderson sought an attorney to sue the four school officials who refused him the opportunity to engage in religious expression on the ICCC campus. Henderson first contacted his lead attorney, Nathan Kellum, on or about September 18, 2014. Henderson also employed Micah Schreurs, to serve as local counsel, and his assistant, Meg George.

Kellum filed a Complaint (docket no. 2) on July 16, 2015, on behalf of Henderson, asserting claims under the First and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. He filed a Motion for Preliminary Injunction (docket no. 6) on July 24, 2015. Kellum first identified and communicated

3

with defense counsel on July 28, 2015, by emailing a copy of the Motion for Preliminary Injunction and Complaint to them. On July 30, 2015, the defendants acknowledged that they were willing to take action immediately, by replacing the college's Policy 215 with another university policy that had been approved by the Eighth Circuit Court of Appeals in *Bowman v. White* under similar factual circumstances. 444 F.3d 967 (8th. Cir. 2006). Henderson's Motion for Preliminary Injunction was resolved by a Consent Order (docket no. 8) on August 18, 2015, reflecting an agreement between the parties.

On October 12, 2015, Henderson filed a Motion for Attorney's Fees and Non-taxable Expenses and a Declaration of Nathan W. Kellum in Support of Plaintiff's Motion for Attorney's Fees and Non-taxable Expenses ("Kellum's Decl."), among other supporting documents. The defendants filed a Resistance to Plaintiff's Motion for Attorney's Fees on October 20, 2015. Henderson filed a Reply in Support of Plaintiff's Motion for Attorney Fees and Non-taxable Expenses on October 27, 2015.

Henderson requests recovery for 2 hours of work by Micah Schreurs at an hourly rate of $210, 3.3 hours of work by Meg George at an hourly rate of $50, and non-taxable expenses of $157.13. Henderson also requests the recovery of attorney fees for Kellum's 114.9 hours of work at an hourly rate of $350. This request includes 104.4 hours of for work performed by Kellum up to October 12, 2015, and an additional 10.5 hours Kellum spent on the October 27, 2015, Reply to the Defendants' Resistance to Plaintiff's Motion for Attorney's Fees. Kellum notes that he actually worked 8.7 more hours than requested, but reduced his request in the exercise of billing judgment. Kellum's Time and Fee Statement (docket no. 17-3) reports that he spent 38 hours preparing the Complaint and about 21 hours preparing a Brief in Support of a Motion for a Preliminary Injunction. Kellum began working on the Complaint on April 25, 2015, and claims he expended 66.4 hours before he attempted to identify defense counsel on July 24, 2015.

Kellum claims to be a highly specialized First Amendment civil rights lawyer. He is "Chief Counsel with the Center for Religious Expression (CRE), a non-profit legal organization based in Memphis, Tennessee." Kellum's Decl. 1. He asserts that he practices "almost exclusively in the First Amendment and civil rights area, particularly, in the field of free speech. *Id*. at 2. He declares to "practice regularly in federal court and have appeared in various jurisdictions in different parts of the country, at both the district court and appellate court levels." *Id*. 1-2. He also declares that he has "been lead counsel in many other § 1983 civil rights cases involving religious speech . . ." *Id*. at 2. Kellum recognizes that "practicing in this specific area of law for over 25 years, [that he has] developed a certain level of knowledge and expertise." *Id*. at 3. He further states that he has "taught numerous seminars for continuing legal education in different parts of the country . . ." and has "authored two law review articles, one concerning speech on public university campuses. . . ." *Id*. I have no reason to doubt, and in fact, applaud the specialized expertise Kellum has developed practicing in this area for over 25 years. He is, without question, a highly specialized civil rights lawyer, ideally suited for this case involving the free expression of religious speech at a public community college. Indeed, Kellum was lead counsel in the very Eighth Circuit case that controls the disposition of the First Amendment constitutional claims in this case—*Bowman v. White,* 444 F.3d 967 (8th Cir. 2006). Interestingly, and not disclosed by Kellum in his lengthy ten page declaration in support of his fee request or in his attorney fee briefing, the court in *Bowman* took a meat cleaver to Kellum's fee request. As discussed below, the *Bowman* court is not the only court to dramatically slash Kellum's fee requests, for the same reasons I am.

## II. AUTHORITY FOR AND CALCULATION OF FEE AWARDS

A plaintiff is entitled to receive a reasonable award of attorney fees and expenses as the prevailing party in his 42 U.S.C. § 1983 civil rights action pursuant to § 1988. *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903, 908 (8th Cir. 2012). Section 1988 provides: "In any action or proceeding to enforce a provision of section[ ] 1983. . . the court, in its discretion, may allow the prevailing party, [ ] a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Although the language of 42 U.S.C. § 1988 is couched in discretionary terms, reasonable fees and expenses are generally awarded to a prevailing party unless special circumstances exist. *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989).

The method employed by the Supreme Court for calculating attorney fees is known as the "lodestar" method. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Warren v. Prejean*, 301 F.3d 893, 904 (8th Cir. 2002). Under the lodestar method, the district court multiplies the number of hours reasonably expended by the relevant market rate for legal services, then reduces the amount for partial success. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Jensen v. Clark*, 94 F.3d 1191, 1203 (8th Cir. 1996). Additionally, the court may undertake various reductions of the claimed fees, based for example, on limited success, an unreasonable hourly rate, excessive hours expended, or poor record keeping. *See Delaware Valley*, 478 U.S. at 565-66; *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988). "It remains the applicant's burden to establish entitlement to a particular award by presenting adequate documentation of its efforts in the litigation." *United Healthcare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 565, 574 (8th Cir. 1996) (citing *Hensley*, 461 U.S. at 437). The Eighth Circuit Court of Appeals has instructed that the factors identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.

1974), "should be used to set the reasonable number of hours and reasonable hourly rate components of the fee award formula" *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988), although district courts need not "examine exhaustively and explicitly, in every case, all of the factors that are relevant to the amount of a fee award," *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999). The *Johnson* factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*McDonald*, 860 F.2d at 1459 n.4 (citing *Johnson*, 488 F.2d at 717-19). The Supreme Court in *Hensley* cautioned that "[t]he district court may also consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (CA5 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

The Supreme Court noted that hours may be eliminated for being "excessive" based on a district court's determination that a less amount of time was "reasonable." *Delaware Valley*, 478 U.S. at n.2. Hours are "excessive" when an attorney spends too much time on particular projects. *See Premachandra v. Mitts*, 727 F.2d 717, 733 (8th Cir. 1984). The Supreme Court stated that the opinion of a hypothetical fee-paying client

7

reviewing a fee request in the context of a voluntary, open-market relationship, could be used to assess the reasonableness of a fee request:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S. App. D. C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 433-34. Thus, the prevailing attorney is under the obligation to make a good faith effort to exercise billing judgment and I am obliged to assess the reasonableness of this request.

### III. ARGUMENTS OF THE PARTIES

The parties agree that the applicable legal standard for the award of a reasonable fee is derived from the "lodestar," a calculation that multiples the reasonable number of hours by the reasonable hourly rates. Br. In Supp. Pl.'s Mot. For Att'y Fees and Non-Taxable Expenses, 1 (docket no. 17-1) ("Pl.'s Brief"); Memo In Supp. Def.'s Resistance to Pl.'s Mot. For Att'y's Fees, 1 (docket no. 18-2) ("Def.'s Memo") (citing *Hensley* and *Warren*). The defendant does not object that the plaintiff is a "prevailing party" in this § 1983 case. The parties further agree that the plaintiff's claimed hourly rate of $350 for Nathan Kellum, is reasonable and customary for like work. (Def.'s Memo, 5). The defendants raise no objection to the 2 hours claimed by Micah Schreurs, the 3.3 hours claimed by Meg George, or the request for nontaxable expenses related to litigation in

the amount of $157.13. Def.'s Resistance To Pl.'s Mot. For Att'y's Fees, 3 (docket no. 18).

The defendants argue that a number of hours claimed by Kellum were unnecessary. The thrust of the defendants' argument is that Kellum worked for ten months before attempting to contact the defendants or defense counsel. Once Kellum did contact defense counsel, it took only two days to resolve the matter. The defendants claim that the 38 hours Kellum spent preparing the Complaint and nearly 21 hours preparing the Motion for Preliminary Injunction and supporting brief were unnecessary, because the same result could have been achieved in a fraction of the time through a brief conversation. Therefore, they request that I reduce any award for attorney fees for Kellum by 59 hours.

The plaintiff responds to this argument by pointing out that the defendants do not contest that the amount of time Kellum spent completing a particular task was unreasonable, rather they claim these hours worked were unnecessary because Kellum could have contacted defense counsel for an earlier resolution to the case. The plaintiff argues that the court can only excise those hours which are deemed "excessive, redundant, or otherwise unnecessary" from the fee request, according to the standard set in *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The plaintiff argues that 42 U.S.C. § 1983 does not require a plaintiff to do anything before filing a lawsuit. Additionally, the plaintiff argues, despite being under no obligation to do so, he went to "extraordinary lengths" to resolve the issue with the defendants informally. He talked with various ICCC representatives, and at each denial of relief, he went up the chain of command, finally speaking to the President of ICCC and the Board of Directors. Because he was told by college officials that they had consulted with their attorney and the highest officials at ICCC still denied his request for relief, the plaintiff argues that legal action in federal court was his last remaining option.

Henderson argues the defendants have not proven that the requested hours are excessive, redundant, or otherwise unnecessary for two reasons. First, the defendants have not argued that 38 hours to draft a Complaint or 21 hours to draft a Motion for Preliminary Injunction and supporting brief is an excessive amount of time for either task. Second, because Henderson already attempted to resolve this issue informally, before filing suit, and because his attorney was under no obligation to contact the defendants or defense counsel, the hours cannot be deemed unnecessary. Therefore, the plaintiff argues, the hours spent drafting the Complaint and Motion for Preliminary Injunction and supporting brief were necessary and reasonable and he should be awarded the entirety of his fee request.

## IV. LEGAL ANALYSIS

The parties are in agreement as to the reasonableness of the hourly rates requested by each of the plaintiff's legal team. The defendants only take issue with the reasonableness of the number of hours Kellum worked, before identifying or contacting the defendants or their counsel. I agree with the defendants that there are no issues with the requested fee, except with the reasonableness of the number of hours requested by Kellum, and so, that is the only issue analyzed below.

### A. *Are Hours Requested for Excessive Work?*

A high hourly rate is warranted for someone with extensive experience, partially because it is expected that experienced practitioners will be more efficient with the use of their time. *See Miller v. Dugan*, 764 F.3d 826, 833 (8th Cir. 2014) ("The district court noted that [the attorney]'s normal hourly rate—proffered as reasonable in part due to his 'great deal of experience working on Civil Rights Act cases'—was inconsistent with the number of hours spent researching and preparing the motion and the reply.").

Although I do not question the ethics or abilities of Kellum, in my view, the complexity of the issues in this case, relative to Kellum's experience and expertise, simply do not warrant the requested amount of "lawyering." Kellum states that he exercised billing judgment and reduced any time that could be considered questionable. Pl.'s Mot. 4. He eliminated a total of 8.7 hours, requesting recovery for 114.9 hours. This reduction does not go far enough. Kellum should not claim a high hourly rate based on his alleged expertise, and then turn around and bill an excessive amount of hours, when this is another of the narrowly focused First Amendment cases he often handles.

Kellum states that he "ha[s] been lead counsel in many other § 1983 civil rights cases involving religious speech" in his Memorandum in Support of Motion for Attorney Fees. Kellum has, indeed, handled many similar First Amendment cases involving plaintiffs handing out religious materials in public places and at universities. He also has a lot of experience requesting attorney fees and having those fees slashed for being excessive. *Corral v. Montgomery Cnty.*, 91 F. Supp. 3d 702 (D. Md. 2015) (reducing award for the hours claimed by Kellum from 38.7 to 25 hours for "preparing and revising the original complaint, reviewing the local rules, preparing summonses, and researching and preparing the amended complaint" and reducing hours requested from 124.7 to an award for 75, for time spent "on motions practice, including time spent preparing the motion for preliminary injunction and the reply . . . which [we]re not particularly thorough and largely replicate the arguments made in the preliminary injunction briefings"); *Gros v. New Orleans City*, 2014 U.S. Dist. LEXIS 75468 (E.D. La. June 3, 2015) (reducing Kellum's "astronomical number of hours for telephone and email communications" by 75%, then finding, even after that reduction, that the "number of hours expended by Kellum [wa]s grossly excessive," and reducing the number of hours by an additional 50%); *Deferio v. Bd. of Tr.*, 2014 U.S. Dist. LEXIS 9417, **43-44 (N.D. NY Jan. 27, 2014) (comparing Kellum's complaint and motion papers to those he

previously filed and finding that the cases involved similar legal and factual issues, and contained similar points of law and analysis, reducing Kellum's award for hours reasonably expended by one-third); *Bowman v. White*, 2006 U.S. Dist. LEXIS 53919, \*\*7-10 (W.D. Ark. Aug. 2, 2006) (reducing Kellum's request of 23 hours for drafting a 17 page complaint because it contained far more detail than is necessary under federal notice-pleading requirements, and the court believed it could have well been prepared in the course of one day; and reducing Kellum's request of 62.7 hours for research and drafting a motion and brief for preliminary injunction by 20 hours because of Kellum's extensive practice and expertise in this narrow area; reducing Kellum's total request from 259.7 by 56 hours for claiming excessive hours worked).

I turn now to an analysis of the reasonableness of the 38 hours Kellum spent preparing his Complaint in this case. Rule 8 of the Federal Rules of Civil Procedure states, "a claim for relief must contain . . . a *short and plain* statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. PRO. 8 (emphasis added).

About half of the plaintiff's Complaint is bulky excerpts of dialogue. *See* Pl. Compl. ¶¶ 47, 50, 52, 55, 56, 57, 58, 59, 64, 65, 66, 67, 68, 73-78, 83, 85, 87-91. 95-98, 100-13, 117-19, 121-23, 131-44, 146, 147, 153, 154, 156-164, 166-180. For example, paragraph 100 of the Complaint reads,

> Acknowledging that the people on campus might recognize him, Henderson noted that a few of them have thanked him for what he does. To this, Beneke replied: "Sure. Yea, and I think you have a college policy in place that blankets and covers, you know, all areas. And not to say that individuals don't appreciate that, because you're going to have pockets of that all over. And I think the one thing you have to keep in mind is, for the college is, where do you shut that off? Because it could be one of a thousand different entities coming in and, in my view, solicit students in beliefs or organizations or cults or whatever, because now, here's where I'm going,

> because this weekend it happened." Beneke added that a representative of a local bar recently came to campus and distributed coupons.

Pl. Compl. ¶ 100. This is far beyond the scope of a "short and plain statement" of the claim. These half-page servings of dialogue are used redundantly to serve the same, few, legally relevant points. On pages 14-19 of plaintiff's Complaint, five and a half pages are devoted to expressing what can be summarized in a paragraph:

> After consulting with the school's board and an attorney, Beneke told the plaintiff he understood Policy 215 prohibited solicitation, which includes handing out written materials, in areas of the campus which are primarily devoted to educational purposes. Beneke believed that the plaintiff's activities, including handing out money and gospel tracts, constituted solicitation in areas which were primarily devoted to educational purposes. Beneke and the plaintiff disagreed with his interpretation of what activities qualified as solicitation. They discussed the contours of the policy and tried to work together toward a satisfactory resolution for both parties.

Next, I analyze the reasonableness of spending 21 hours to prepare a 19 page Brief in Support of Motion for Preliminary Injunction. About 7 pages of this Brief are copy-pasted recitations of fact taken from the Complaint. About 8 pages of the content recite the well-established standards of law for the type of First Amendment cases Kellum regularly, and almost exclusively, handles. As most of the case law in this area is established by the Supreme Court, little time was required to localize his brief with Eighth Circuit precedent. Indeed, in the one essential Eighth Circuit case relied on by Kellum, he was lead counsel and obviously knew the case cold. Only about 4 pages could be described as uniquely written for the underlying case Kellum was briefing, applying the legal standards to the facts at hand.

Like the many other United States district court judges, I find Kellum's requested recovery for hours worked, to be excessive. Not only is Kellum's Complaint bloated, inflating his claim for hours worked, but even this unnecessarily long Complaint would not take a reasonable attorney, even one lacking Kellum's considerable specialized expertise, so long to prepare. A reduction of the fee claim made here, for overreaching by claiming excessive hours, falls within the Supreme Court's specific authorization for a percentage reduction. *Hensley*, 461 U.S. at 436-37. After a careful review of the time records for Kellum, I am left with a firm conviction that the requested amount of hours is excessive. No fee-paying client should be asked to pay for this gross overbilling and neither should the defendants.

Therefore, I find that the 38 hours requested for drafting the Complaint shall be reduced by 32 hours, finding that a complaint by a lawyer with Kellum's considerable specialized expertise could have easily been drafted in 2-4 hours; but giving Kellum the benefit of all doubt, I award him 6 hours for drafting the Complaint. The 21 hours requested for drafting the Motion for a Preliminary Injunction and supporting brief is subject to all of the same considerations for drafting the Complaint. Thus, I find that the 21 hours requested for drafting the Motion for Preliminary Injunction and supporting brief shall be reduced by 13 hours, because this could have been easily been accomplished by a lawyer with Kellum's considerable specialized expertise and with Kellum's brief bank on similar cases, in 4-6 hours; but, giving Kellum the benefit of all doubt, I award him 8 hours for drafting the Motion for a Preliminary Injunction and supporting brief.

In sum, Kellum's request for 114.9 hours is **reduced** by 45 hours to 69.9 hours, for requesting an unreasonably excessive amount of time to complete the tasks described above.

### B. Are Hours Requested for Unnecessary Work?

The Supreme Court explained in *Hensley v. Eckerhart* that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* . . . ." 461 U.S. 424, 434 (1983). Fee-shifting statutes are designed to "ensure effective access to the judicial process for persons with civil rights grievances, not to serve as a full employment or continuing education program for lawyers and paralegals." *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992). District Court Judge Scott O. Wright notes that, "an entitlement to fees and expenses is not an open invitation to gouge the [defendant]." *United States v. Adkinson*, 256 F. Supp. 2d 1297 (N.D. Fl. 2003). The Supreme Court explained that the exercise of "billing judgment," whether performed by counsel or the court, need not result in the reduction of compensable hours, so long as the hours actually spent were also reasonably spent. *City of Riverside v. Rivera*, 477 U.S. 561, 569-70 n.4 (1986). Thus, the test for whether billing judgment has been exercised is, therefore, not whether certain hours were *actually* billed to the client, but whether it would be *reasonable* to do so.

In response to the defendants' argument that a phone call or email to defense counsel would have resolved this case before Kellum had to request recovery for over 60 hours of legal work, Kellum argues that § 1983 does not require a plaintiff to do anything before filing a lawsuit. Pl.'s Reply 4. Kellum relies on a number of cases to support this broad proposition that he was under no legal obligation to contact defense counsel before filing suit. Although Kellum did not have a duty to contact defense counsel, he still has an obligation to spend billable hours reasonably, which he did not do, because he did not contact defense counsel sooner to see if an efficient resolution could be reached. As Kellum's hypothetical, voluntarily-fee-paying client, I would balk at a legal bill for over $40,000 when the matter was resolved within two days of my attorney contacting the parties who had wronged me. A client paying by the hour is interested in

15

an attorney who makes efficient use of his time. It is clear that any fee-paying client would prefer an attorney who attempts to resolve an issue quickly and informally over an attorney who bills for 60 hours at an hourly rate of $350 before even attempting to achieve a resolution. Under a fee-shifting dispute, defendants are entitled to the same efficiencies reasonably expected by a fee-paying plaintiff.

The defendants argue, in essence, that most of the time Kellum spent before contacting them was unnecessary. Although there is no affirmative legal duty to specifically contact defense counsel before filing suit, the defendants argue that the same result could have been obtained with a fraction of the effort. The defendants cannot establish that Kellum would have achieved the same highly successful results for his client through a short phone call or email, as he did achieve through his filings with the court. But, I am not convinced that it was a reasonable course of conduct to work for over 60 hours before trying to contact defense counsel in this case, when there existed a great possibility of achieving the same result much more efficiently. A reasonable attorney knows that his mere involvement changes the dynamic of a conflict, it escalates the seriousness of the matter beyond what a client can convey alone. The fact that Henderson spoke to several ICCC officials about the underlying controversy, does not persuade me, that, once Kellum became involved, his "last remaining option" was a full-on legal assault. Pl.'s Br. 5. I do not intend to question the ethics of Kellum, but an award for all claimed hours, here, would incentivize attorneys to work as much as possible, before defendants are even aware that they might be picking up the bill for legal services. The rationale for fee-shifting statutes is that many civil rights plaintiffs are unable to afford competent attorneys without them, thus, civil rights plaintiffs would be limited to attorneys that agree to take on their cases *pro bono*. *See Hensley*, 461 U.S. 443-446. Additionally, in the absence of fee-shifting statutes, attorneys might only concentrate on civil rights cases involving the possibility of large monetary damages awards. *Id*. This

would result in the neglect of important civil rights cases that involve only equitable relief. *Id.* The underlying rationale for fee-shifting statutes certainly does not encourage plaintiff's attorneys to blind-side defendants with very substantial legal bills they do not know have been accruing.

After assessing Kellum's conduct through the scope of what could reasonably be billed to a fee-paying client, I find that a substantial amount of the work he did could be deemed unnecessary. Kellum churned out over 60 hours of substantive legal work before attempting to identify or communicate with the defendants or defense counsel. Therefore, I find that the 69.9 hours which are not deemed excessive, shall be reduced by 20%, i.e., 14 hours for being unnecessary, reducing any award to a total of 55.9 hours. This 20% reduction is a very conservative estimate of what work is deemed unnecessary. It is very likely that all Kellum needed to do was gather the facts specific to this case and briefly research if new First Amendment cases had been published to resolve this matter, then contact opposing counsel. This falls far short of the time commitments of filing suit.

I now analyze Kellum's additional request for hours to reply to Defendants' Resistance to Kellum's initial fee request, as a separate, unreasonably unnecessary task. Kellum's request for 10.5 hours spent on the Reply to Defendants' Resistance to his Motion for Attorney Fees is not an unreasonable amount of time for an attorney to spend preparing a similar document. Nor is it unreasonable to be awarded recovery for time spent defending a fair request for fees. However, Kellum does this to advance a request for hours similar to which courts have repeatedly instructed him are inflated, excessive, and unnecessary. Kellum's original claim requested an award for an unreasonable amount of hours, which was predictably met with resistance from the fee-paying defendants. Awarding 10.5 additional hours of compensation would be a reward for trying to gouge the defendants, even if those hours are reduced by a court. Again, a reply to a resistance to a motion for attorney fees is not an unreasonable practice and

should not be eliminated in every instance where an attorney's fees are reduced. But, here, the entirety of this request is denied. Thus, I find that the 55.9 hours which were not deemed excessive or unnecessary, above, shall be reduced by 10.5 hours for a total award of 45.4 hours.[1]

### C. *Repeated Inflated Fee Requests*

Kellum gambles that courts will not reduce his hours beyond what may reasonably be recovered, he then seeks to hedge his bet, by billing additional hours, for defending attacks on his clearly excessive requests. This attorney continually advances the same, wildly excessive requests for recovery of attorney fees in United States district courts across the country, which are routinely reduced, but still, he receives fair awards for time reasonably spent. Kellum claims he exercised billing judgment by reducing his request by 8.7 hours, but, somewhat hilariously, includes in his request 0.9 hours to "exercise billing judgment on fee statement" and an additional 0.7 hours to "revise time statement and exercise billing judgment" on September 1, 2015. Kellum's Time and Fee Statement 7. Kellum's entry for September 28, 2015, includes 0.3 hours for "exercise[ing] billing judgment on time statement." *Id*. at 8. He did not eliminate any of the 1.9 hours for "exercising billing judgment" for being excessive or clerical. Twenty-two entries from Kellum's Time and Fee Statement are devoted to the calculation of, and petitioning for his fees, amounting to 15 hours. Kellum then spent an additional 10.5 hours, which has already been disallowed, for a reply which was devoted only to the issue of attorney fees.

---

[1] If I did not find that the entirety of the request for the additional time spent drafting the Reply should be denied, for the reasons stated above, specifically Kellum's expertise and experience requesting fees, I would reduce any award for these 10.5 hours by 7.5 hours for being excessive, finding that it is only reasonable for Kellum to request 3 hours for this task.

Of his original request of 114.9 hours, he is asking the defendants to pay for 25.5 hours of effort devoted entirely to getting them to pay him. Kellum spent over 20% of his requested time counting his money, and is billing for it. Kellum should take care not to highlight his exorbitance when he has been told, often by other federal courts, to make reasonable his requests for the recovery of attorney fees.

I join the courts of *Corral v. Montgomery Cnty.*, *Gros v. New Orleans City*, *Deferio v. Bd. of Tr.*, and *Bowman v. White*, in a chorus to say: Stop submitting such wildly excessive requests for attorney fees. In an effort to convey the gravity of this message, I reduce the remaining 45.4 hours by 10 hours, for a total award of 35.4 hours Kellum's history of dramatic reductions in prior fee requests has done nothing to cure his avarice in seeking fees. I hope this will provide a cure for his practice that the Civil Rights Attorney Fees Award Act, 42 U.S.C. § 1988, is a full employment act for lawyers to engage in blind-sided blitzkrieg litigation when one holds the winning cards.

## V. CONCLUSION

For the reasons stated above, the plaintiff's Motion for Attorney's Fees is hereby **granted in part**. The requests for 2 hours of work by Micah Schreurs at an hourly rate of $210 for a subtotal of $420; 3.3 hours of work by Meg George at an hourly rate of $50 for a subtotal of $165; and request for non-taxable expenses of $157.13 is **granted**. The requested 114.9 hours by Nathan Kellum is **reduced** to an award for 35.4 hours at an hourly rate of $350 for a subtotal of $12,390, and thus, **granted in part**. The table below is a summary of the same:

| Legal Professional | Hourly Rate | Hours Awarded | Total |
|---|---|---|---|
| Micah Schreurs | $210 | 2 | $420 |
| Meg George | $50 | 3.3 | $165 |
| Nathan Kellum | $350 | 35.4 | $12,390 |

THEREFORE, I order judgment be entered in favor of Henderson and against defendants for attorney fees in the amount of $12,975 and $157.13 in costs; interest on attorney fees and costs shall accrue beginning on the date of the entry of judgment, at the federal judgment rate.

**IT IS SO ORDERED**.

**DATED** this 1st day of December, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA